CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO. *v.* SIMS.

Opinion delivered March 21, 1927.

1.  CARRIERS—CARRYING PASSENGER BEYOND STATION—EVIDENCE.—In an action against a railway company for injuries to the health of a passenger walking to her destination over a wet, muddy road at night, after being carried beyond her station and brought back, plaintiff's testimony that she had made arrangements with her son-in-law and daughter to meet her *held* not inadmissible as hearsay; being a statement of facts explaining how she knew of arrangements with them to transport her to destination.

2.  CARRIERS—NEGLIGENCE.—Testimony *held* sufficient to sustain verdict for passenger against railroad company on issue of negligence in allowing her to board train without informing her that it would not stop at her station.

3.  CARRIERS—DUTY TO NOTIFY PASSENGER OF INABILITY TO STOP—INSTRUCTIONS.—In an action against a railway company for injuries to a passenger resulting from its failure to stop its train at her station, instructions that it was the duty of defendant's employees to notify plaintiff, when she undertook to board the train, that it did not stop at her station; *held* authorized by evidence.

4.   CARRIERS—FAILURE TO NOTIFY PASSENGER—DAMAGES.—Failure of
     defendant railway company to notify plaintiff, when she under-
     took to board the train, that it did not stop at her station, *held*
     to entitle her to recover the damages proximately caused thereby.

5.   CARRIERS—MODIFICATION OF INSTRUCTIONS.—In an action for
     injuries to passengers as the result of a failure to stop the train
     at her station, refusal of defendant's request for instructions that
     the conductor was not required to stop the train there, though
     he and brakeman promised plaintiff to do so, if it was not
     scheduled to stop, and that it was plaintiff's duty to find out
     whether it stopped there before boarding the train, and giving
     such instructions as modified by the provisos, "or had not been
     accustomed to stop there," and "unless she already had this
     information" *held* not prejudicial error.

6.   CARRIERS—DAMAGES EXCESSIVE WHEN.—A verdict for $400 for
     injuries to a passenger carried beyond her station, and thereby
     forced to walk over a wet road at night, *held* excessive by $200,
     in absence of proof that it was necessary to take the walk that
     night.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler*, Judge; affirmed.

*George B. Pugh,* for appellant.

*D. D. Glover,* for appellee.

WOOD, J.   This action was instituted by the appellee against the appellant to recover damages for personal injuries. The appellee alleged that she was a passenger on appellant's train from Reyburn to Opitz; that the appellant, through the negligence of its agents, servants and employees, carried her by her destination, which was Opitz, on to Haskell, and that, after some delay at Haskell, the appellant brought her back to Opitz. On the occasion mentioned the appellant was going to Opitz, a station on appellant's line, to visit a sick man who lived about two miles from Opitz; that, on account of the delay occasioned by being carried by her station, when she finally reached Opitz it was night-time, and she could make no arrangements for transportation to the home of the sick man, and had to walk there, over a road that was wet and muddy, causing her to be ill, and resulting in damage to her in the sum of $1,500, for which she prayed judgment. The answer was a denial of all the material allegations of the complaint.

The testimony, giving it its strongest probative force in favor of the verdict, is substantially as follows: The appellee was 64 years of age, and had been afflicted for about two years with high blood pressure and a nervous ailment. High blood pressure is not itself a disease, but a symptom of some other disease. Any exercise on the part of a person 64 years old would elevate the blood pressure and increase the nervous condition. Excitement and exercise are injurious to a person having high blood pressure. Absolute rest, so far as possible, is essential to one in that condition. On the occasion of the alleged injury the appellee was a passenger on appellant's train from Reyburn to Opitz, going to see a sick man by the name of Westbrook, who was related to her family. He was sick unto death, and died during this illness. Appellee had been going there before this visit to him. A nephew of the appellee by marriage was with her. When the train stopped at Reyburn the auditor came out to receive them, and asked where the appellee was going. She replied "Opitz," the auditor said "Opitz," and the appellee replied, "Yes sir." The auditor then took appellee by the arm, led her up the steps, and she went in the car and took her seat. Her nephew was going to Haskell. He got on the train behind the appellee. After "some little bit" the train official came along and asked appellee where she was going, and she told him to Opitz, and he took her fare to Opitz, 28 cents. He went on, and, after "some little bit," came back and said, "I can't put you off at Opitz." The appellee protested, and told the official that she was going to see a sick man, and it would be after dark if they took her on to Haskell. They carried her on to Haskell, and there appellee tried to get some connection with her folks by telephone, but could not do so. The appellant kept appellee at Haskell about an hour, and then brought her back to Opitz. When she arrived at Opitz it was dark. After getting off the train, appellee went up to Mrs. Opitz' house to 'phone to see if she could get in touch with her son-in-law, who lived in the neighborhood of the sick man, but she could not get

him. Then she went to a man's house by the name of Smith, and tried to 'phone her son-in-law from there, but failed. They had a telephone at the sick man's home, but had plugged the same, as he was very low. Appellee was accompanied by her nephew. It was dark, had been raining, and was muddy. If appellee had been put off at Opitz, as she contemplated, she would have had some one to meet her there. After the train had passed her people had gone to the sick man's house to sit up with him that night. Appellee had had high blood pressure for about two or three years. Before this occurred she had been some better. The walk she had to take exhausted her. She had to give up, and was nervous, and had to go to bed shortly after she arrived at the house of the sick man. Since then her condition has been a whole lot worse. She has been reduced in weight, and had been treated ever since, and had to take medicine all the time. She suffered pain on account of the walk. If appellant's trainmen had told her when she started to get on the train that they could not put her off at Opitz, she would not have boarded the train at all.

Appellee's nephew corroborated substantially the testimony of the appellee as above set forth, and, in addition, he testified that the train they boarded at Reyburn that day was being run in the motor car's place. It was not a fast train, and stopped anywhere. It was a dark night, the road was muddy, and holes were in the road. When they arrived at Westbrook's, that night, the appellee was "played out" and had to lie down. On cross-examination this witness testified that he had been going to Opitz every Sunday night for a month. He knew that the train would stop there, whether it was scheduled to stop or not. The train that evening was making the same connection that the motor-car did. It would have required about a minute or two to put the appellee off at Opitz.

The conductor of the appellant's train on this occasion testified to the effect that it was not his regular run. It was a local passenger train on this run, because the

motor-car was being held for repairs. This train was runing on the motor-car schedule. It was supposed to stop at every place that the motor-car stopped. Witness was standing right there on the platform when the appellee got on, and he had a man there whose business it was to load the passengers. It was the brakeman's duty to load the passengers on the proper train, and it was his duty, if the train didn't stop at Opitz, to keep the appellee from getting on for that station, and the brakeman did not do this. Appellee got on. The train should have stopped every place the motor-car stopped. Opitz was not a regular stop, but witness stopped the train as an accommodation for the traveling public. It would have taken about five minutes to stop and start the train. This witness stated that he told appellee, when she told him she wanted to go to Opitz, that Opitz was not a stop for that train, and the best that he could do for her would be to take her on to Haskell and to return her to Opitz on the next train, and that he would only charge her the one fare from Reyburn to Opitz. Witness stated that the appellee said "All right," but requested witness to stop at Opitz, if possible, and witness told appellee he would do so if he could, but he looked at his time card and found that he was making a close connection with another train, and the best he could do was to carry her on to Haskell and bring her back.

The brakeman testified, and corroborated the testimony of the conductor of the train. He testified that the train was not scheduled to stop at Opitz, and they could not stop on that particular day for accommodation because the train was late, and they had to make connection at Haskell with two other trains. He denied that this particular train had stopped at Opitz, and denied that the motor-car stopped there.

Witnesses Mr. and Mrs. Opitz testified that Mrs. Sims came to their house on the night mentioned to get transportation to Westbrook's, but they were unable to take her. One of them also testified that it was suggested to appellee that she might get a car over there at the church, where they were having a singing.

The appellee, over the objection of the appellant, testified that she had made arrangements with her son-in-law and daughter, who were going back about that time, to meet her at Opitz, or to telephone them. They had told her at any time she would come, get on the train and telephone, they would come to meet her. After the train didn't stop at Opitz, appellee's daughter went on over to the sick man's house, and, when appellee got to the sick man's house, her daughter was there.

The court instructed the jury, in effect, over the objection of appellant, that it was the duty of the appellant's agents, servants and employees in charge of the train to have notified the appellee, when she undertook to board the train, that it did not stop at Opitz, unless they intended to stop for her to get off there, and, if they negligently failed to perform that duty and appellee was damaged by reason of their negligence in failing to stop the train and let her off, the verdict should be in favor of the appellee. The court refused appellant's prayer for a directed verdict, to which appellant duly excepted.

The appellant asked the court to instruct the jury, in effect, that, if the train was not scheduled to stop at Opitz, the conductor was not required to stop the same there, even if the conductor and brakeman had promised the appellee to do so. The court granted prayers to this effect, after modifying same, and instructed the jury, in effect, that the conductor was not required on this occasion to stop the train at Opitz if the same were not scheduled to stop there or had not been accustomed to stop there. The appellant asked the court to further instruct the jury that it was the duty of the passenger to find out whether the train stopped at a given destination before boarding the train. The court, over the objection of appellant, modified this instruction, and instructed the jury that it was the duty of the appellee, as a passenger, to inquire where the train stopped, unless she already had this information beforehand. The jury returned a verdict in favor of the appellee in the sum of $400. Judgment was entered in her favor for that sum, from which is this appeal.

1.   It was not error to permit the appellee to testify that she had made arrangements with her son-in-law and daughter to meet her at Opitz; that they told her to telephone them and they would come to meet her.   This was not in the nature of hearsay testimony, but was the statement of facts, explanatory of how she knew she had made arrangements for them to transport her to her destination.

2.   The undisputed testimony by appellant's own conductor is that it was the duty of appellant's brakeman not to permit the appellee to board the train at Reyburn for Opitz if the train was not allowed to stop at the latter station.   The testimony shows that the brakeman did this after the appellee had notified the officials that she wished to stop at Opitz.   The negligence in this particular consisted in allowing the passenger then to go upon the train without informing her that the train would not stop at Opitz.   It is unnecessary to discuss the testimony on the issue of negligence.   The testimony is sufficient to sustain the verdict on that issue.

3.   The court did not err therefore in giving appellee's prayers for instructions telling the jury that it was the duty of appellant's employees in charge of the train to have notified the appellee, when she undertook to board the train, that the train did not stop at Opitz.   The undisputed evidence, as we have seen, shows that appellee had notified appellant's employees before she boarded the train that she wished to stop at Opitz.   In view of the undisputed testimony proving negligence on the part of the appellant, which was the proximate cause of some injury and damage to appellee, she was entitled to recover.   There was no prejudicial error in the rulings of the court in refusing appellant's prayers for instructions as asked and in modifying and giving the same as modified.

4.   While appellee was entitled to recover some damages, yet, under the circumstances developed by the proof, the verdict was clearly excessive.   It occurs to us, from the amount of the judgment, that the jury enhanced

the damages beyond what she was entitled to receive by reason of the fact that the night was dark and the road was muddy. But there is nothing in the proof to warrant the seemingly irresistible impulse of the appellee to walk the distance between Opitz and where her sick friend lived, in the dark and through the mud, rather than to wait overnight at Opitz and make the journey the next morning, under more favorable conditions.

The proof does not disclose that her presence in the sick-room that night would have been even necessary, much less indispensable. To be sure, appellee was entitled to compensation for the actual damages which she sustained by reason of appellant's negligence, but, under the proof, we are convinced that the sum of $200 would be most liberal compensation for all her actual damages, both physical and mental, growing proximately out of the negligence of appellant in permitting her to board its train for Opitz.

The judgment will therefore be reversed, and remanded for a new trial, unless appellee enters a *remittitur* in ten days of $200. In that case the judgment will be affirmed for that sum.